UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
FRANCY OCAMPO,                                    :
                                                  :
                           Plaintiff,             :
                                                  :
            -v-                                   :
                                                  :
BUILDING SERVICE 32B-J PENSION                    :
FUND and BOARD OF TRUSTEES FOR                    :
THE BUILDING SERVICE 32B-J                        :
PENSION FUND,                                     :
                                                  :
                           Defendants.            :
-------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: FEB 1 4 2014
```

12 Civ. 8422 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

On November 16, 2012, plaintiff Francy Ocampo ("plaintiff" or "Ocampo")

filed this action against defendants Building Service 32B-J Pension Fund ("the

Pension Fund") and the Board of Trustees for the Building Service 32B-J Pension

Fund ("the Board of Trustees") (together, "defendants"), alleging under the

Employee Retirement Income and Security Act of 1974 ("ERISA"), 29 U.S.C. §§

1132(a)(1)(B), that defendants improperly denied her certain disability benefits.

(Compl., Nov. 16, 2012, ECF No. 1.)  On December 19, 2012, defendants answered

(see ECF No. 3) and on July 10, 2013, plaintiff filed a motion for summary

judgment.[1]  (See ECF No. 7.)  Two days later, on July 12, 2013, defendants filed a

cross-motion for summary judgment.  (See ECF No. 11.)

---

[1] On June 6, 2013, this matter was reassigned from The Honorable Thomas P.
Griesa to the undersigned.  (See ECF No. 5.)

1

For the reasons set forth below, the Court finds that defendants have acted neither arbitrarily nor capriciously and GRANTS defendants' motion for summary judgment.

I.      FACTUAL BACKGROUND

For more than 20 years, plaintiff worked as an office cleaner and was a member of the Local 32B-J union (or its predecessors in interest). (Compl. ¶ 4.)  On March 22, 2005, plaintiff stopped working because of back problems.  (Peggy Napier Affidavit in Support of Motion for Summary Judgment ("Napier Aff."), Ex. A at 1, July 12, 2013, ECF No. 12[2] (stating March 22, 2005 was plaintiff's last day of work and the first day of her disability).)

On July 29, 2005, plaintiff submitted an application to the Social Security Administration ("SSA") for disability benefits, and on December 7, 2006, the SSA issued a bench decision approving plaintiff's application.[3]  (Id., Ex. B at 2.)  The SSA determined plaintiff was disabled and unable to sustain full-time employment because of "herniated disks at L4-5 and L5-S1 with S1 nerve root compression and L5 radiculopathy and peripheral polyneurepathy."  (Id.)  The SSA stated that she would be receiving additional information regarding her benefits at a later date. (Id.)  On March 26, 2007, the SSA issued plaintiff a Notice of Award, which stated plaintiff was entitled to monthly disability benefits beginning September 2005 because she had become disabled under the SSA's rules on March 22, 2005.  (Id., Ex.

---

[2] The Court manually numbered the pages included as exhibits to the Napier Affidavit.

[3] It is unclear what the SSA considered in connection with plaintiff's application to the SSA.

2

I at 27.)  Specfically, the Notice of Award said: "Doctors and other trained staff decided that you are disabled under our rules.  But, this decision must be reviewed at least once every 3 years." (<u>Id.</u> at 35.)

On September 14, 2011, plaintiff submitted a claim for a Disability Pension under her Pension Plan ("the Plan"). (<u>Id.</u>, Ex. A.)  On her application, plaintiff indicated that her last day of work was March 22, 2005 and that her disability began that day. (<u>Id.</u> at 1.)  Plaintiff provided as an attachment a "Physician Attestation Statement of Disability," which stated that plaintiff had lumbar radiculopathy. (<u>Id.</u> at 2.)  Plaintiff's physician verified that plaintiff's symptoms began on March 22, 2005, noted that plaintiff's symptoms had stayed the same since March 22, 2005, and circled that that the disability was "permanent." (<u>Id.</u>)

In order to be eligible for a Disability Pension, the Plan provides that a participant's disability must be permanent.  Section 4.10 of the Plan states that a participant "shall be deemed totally and permanently disabled only under the following circumstances:"

> (i)   the Participant presents to the Trustees a certification of a permanent disability benefit award from the [SSA] showing that the Participant's disability was found to have commenced on a date on which the Trustees determine the Participant was working in Covered Employment;
>
> (ii)  the Trustees or their authorized delegate(s) determine, in their sole and absolute discretion as provided in Section 7.06, based upon information submitted, that the Participant became totally and permanently disabled within the meaning of Section 4.10(a) before August 1, 2010 while working in Covered Employment (taking into

3

account the presumption described in that
subsection); or

(iii)    in the case of a Participant who cannot satisfy one
or more of the requirements to receive a disability
benefit award from the [SSA] for reasons unrelated
to the Participant's medical or mental condition,
the Trustees or their authorized delegate(s)
determine, in their sole and absolute discretion as
provided in Section 7.06, based upon information
submitted, that the Participant became totally and
permanently disabled within the meaning of
Section 4.10(a) while working in Covered
Employment (taking into account the presumption
described in that subsection).

(Id., Ex. F at 11.)  Section 7.06 outlines the powers of the Trustees and states that

they "shall have the exclusive right, power, and authority, in their sole and absolute

discretion, to administer, apply and interpret the Plan and any other plan

documents and to decide all matters arising in connection with the operation or

administration of the Plan." (Id. at 25.)

On October 19, 2011, plaintiff's request for a Disability Pension under the

Plan was denied in full; specifically, the Trustees deemed plaintiff ineligible for

Extended Health Care Coverage (Fund-Paid COBRA), Long Term Disability

("LTD") $250 monthly benefits, and a Disability Pension.  (Napier Aff., Ex. I at 8.)

The Trustees denied plaintiff's request because she failed to submit her SSA Notice

of Award.  (Id.)  In response, plaintiff submitted her Notice of Award, which the

Trustees received on or before December 15, 2011.  (Id. at 23.)

On January 17, 2012, the Trustees issued a new determination based on the

additional documentation provided by plaintiff; the Trustees found plaintiff eligible

for LTD, but still ineligible for Extended Health Care Coverage and a Disability

4

Pension. (Id. at 5.) The Trustees explained their denial of plaintiff's request for disability pension as follows:

> The Pension Plan provides that in order to be eligible for a Disability Pension you must have become totally and permanently disabled while working in covered employment and have at least 120 months (10 years) of service credits. Total and permanent disability is established by submitting a Social Security Disability Notice of Award which shows that your disability began when you were working in Covered Employment.

(Id. at 6.) The Trustees stated that while plaintiff had more than 120 months of service credits, her Award Notice did "not show that your disability was permanent while you were working in covered employment." (Id.)

On March 19, 2012, plaintiff appealed the Pension Fund's denial of her application for a Disability Pension, and on June 13, 2012, the Trustees' Appeals Committee entertained plaintiff's appeal regarding that denial. (Id. at 1-3.) On June 18, 2012, the Trustees reaffirmed the denial of benefits: "The [SSA] will review your continuing eligibility for payments at least once every 3 years, if your disability is not considered permanent. The [SSA] deems your disability permanent if it sets review of your continuing eligibility for payments once every 5 to 7 years." (Id. at 1.) According to the Trustees, since plaintiff's SSA disability benefits were to be reviewed once every three years, her disability was not permanent and she was ineligible for a Disability Pension under the Plan.

Plaintiff brought this action because she contends that defendants have acted arbitrarily and capriciously in denying her claim for a Disability Pension under the

Plan. (Compl. ¶ 10; see also Plaintiff's Memorandum of Law in Support of her Motion for Summary Judgment ("Pl.'s Mem."), July 12, 2013, ECF No. 16.)[4]

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment may not be granted unless a movant shows, based on admissible evidence in the record placed before the Court, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On summary judgment, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue of material fact for trial. Price v. Cushman & Wakefield, Inc., 808 F. Supp. 2d 670, 685 (S.D.N.Y.2011); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," because "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159,

---

[4] Plaintiff cites to a number of exhibits in her Memorandum of Law, but no exhibits were ever submitted or received by this Court.

6

166 (2d Cir.2010) (citations omitted); see also Price, 808 F. Supp. 2d at 685 ("In

seeking to show that there is a genuine issue of material fact for trial, the non-

moving party cannot rely on mere allegations, denials, conjectures or conclusory

statements, but must present affirmative and specific evidence showing that there

is a genuine issue for trial.").

Only disputes relating to material facts – i.e., "facts that might affect the

outcome of the suit under the governing law" – will properly preclude the entry of

summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see

also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)

(stating that the nonmoving party "must do more than simply show that there is

some metaphysical doubt as to the material facts").

B. Standard of Review

"[A] denial of benefits challenged under ERISA is to be reviewed under a de

novo standard unless the benefit plan gives the administrator or fiduciary

discretionary authority to determine eligibility for benefits or to construe the terms

of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).

Where the plan administrator has discretionary authority to make eligibility

determinations, courts "will not disturb the administrator's ultimate conclusion

unless it is 'arbitrary and capricious.'" Hobson v. Metropolitan Life Ins. Co., 574

F.3d 75, 82 (2d Cir. 2009) (quoting Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441

(2d Cir. 1995)).

Plaintiff argues a <u>de novo</u> standard should apply because the Pension Fund "punted the determination of plaintiff's entitlement . . . to the SSA. . . . Discretionary authority may have been exercised by the SSA in evaluating the medical and vocational evidence to determine plaintiff's disability, but the Trustees did nothing but adopt the SSA's tentative decision on permanence." (Pl.'s Mem. at 7.)

In response, defendants contend that the SSA's disability determination is merely one factor in the Pension Fund's ultimate determination regarding disability benefits:

> The Plan requires satisfaction of a number of conditions in order to qualify for the disability pension: the applicant must be vested in his or her pension; the applicant must have earned the requisite number of service credits; the disability must have arisen while the applicant was in covered employment. And, to the point, the applicant must have qualified for permanent SSA disability benefits.

(Defendants' Memorandum of Law ("Defs.' Mem.") at 3, Aug. 15, 2013, ECF No. 20.) Peggy Napier, the Director of Compliance for the Building Service 32BJ Benefits Funds (including the Pension Fund), states in her affidavit that in this case, the Trustees exercised their discretion to determine that plaintiff had the required number of service credits but that she was ineligible for a Disability Pension because (pursuant to the SSA's determination), her disability was not permanent. (See Napier Aff. ¶ 3.) Defendants contend that the Trustees did not merely rubberstamp the SSA's determination; instead, they engaged in an independent inquiry, one component of which was the SSA's determination of permanence.

8

The plain language of the Plan illustrates that the Trustees retain ultimate discretion over plan determinations: as stated, the Plan includes language that the Trustees "shall have the exclusive right, power, and authority, in their sole and absolute discretion, to administer, apply and interpret the Plan and any other plan documents and to decide all matters arising in connection with the operation or administration of the Plan." (Id. at 25 (including as subsection (a) that the Trustees have "sole and absolute discretionary authority to:  take all actions and make all decisions with respect to eligibility for . . . benefits payable under the Plan").)

Moreover, Section 4.10 provides, inter alia, that the Trustees can determine "in their sole and absolute discretion" whether a participant is permanently disabled. (Id. at 11.)  The Plan makes clear that the Trustees – rather than the SSA – retain ultimate discretion over whether a participant shall be deemed eligible for benefits.  See Surato v. Building Servs. 32BJ Pension Fund, 554 F. Supp. 2d 399, 418 (S.D.N.Y. 2008) (noting that based on identical language to that at issue here, "[t]he Second Circuit and the district courts within the Circuit have repeatedly found that Building Services 32B-J's Pension and Health Funds grant the Trustees discretionary authority to determine eligibility and to construe Plan terms, triggering the arbitrary and capricious standard of review") (citing Demirovic v. Building Servs. 32B-J Pension Fund, 467 F.3d 208, 211 (2d Cir. 2006) (other citations omitted).

Due to the clear language providing the Trustees with discretion to interpret and implement the Plan, the Court finds that the proper standard of review is arbitrary and capricious.

C. Defendants' Decision To Deny Disability Benefits

"Under the arbitrary and capricious standard of review, [a court] may overturn a decision to deny benefits only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law." Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995) (internal quotation marks and citations omitted). "Substantial evidence is 'such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [administrator and] requires . . . more than a scintilla but less than a preponderance.'" Celardo v. GNY Auto Dealers Health & Welfare Trust, 318 F.3d 142, 146 (2d Cir. 2003) (quoting Miller v. United Welfare Fund, 72 F.3d 1066, 1072 (2d Cir. 1995)).

"'Where both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control.'" McCauley v. First UNUM Life Ins. Co., 551 F.3d 126, 132-33 (2d Cir. 2008) (quoting Pulvers v. First UNUM Life Ins. Co., 210 F.3d 89, 92-93 (2d Cir. 2000)). However, "where the administrator imposes a standard not required by the plan's provisions, or interprets the plan in a manner inconsistent with its plain words, its actions may well be found to be arbitrary and capricious." Id. at 133 (quoting Pulvers, 210 F.3d 89, 92-93 (2d Cir. 2000)); see also Miles v. Principal Life Ins. Co., 720 F.3d 472, 786 (2d Cir. 2013). "Further, where,

10

by their interpretation, the trustees of a plan 'render some provisions of the plan superfluous, their actions may well be found to be arbitrary and capricious.'" <u>Miles v. Principal Life Ins. Co.</u>, 720 F.3d at 786 (quoting <u>Miles v. N.Y. State Teamsters Conference Pension & Ret. Fund Emp. Pension Benefit Plan</u>, 698 F.3d 593, 599 (2d Cir. 1983)).

For purposes of determining whether a claimant is entitled to disability benefits from the SSA, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). In situations where benefits are awarded, the regulations provide the following:

> If your impairment is expected to improve, generally we will review your continuing eligibility for disability benefits at intervals from 6 months to 18 months following our most recent decision. . . . If your disability is not considered permanent but is such that any medical improvement in your impairment(s) cannot be accurately predicted, we will review your continuing eligibility for disability benefits at least once every 3 years. If your disability is considered permanent, we will review your continuing eligibility for benefits no less frequently than once every 7 years but no more frequently than once every 5 years. . . .

20 C.F.R. § 404.1590(d).

Here, the Trustees referred to and relied upon these regulations in determining that plaintiff's disability was not permanent and that she therefore

was not entitled to a Disability Pension.  (<u>See</u> Napier Aff., Ex. I at 1.)  Indeed, in

their June 18, 2012 letter denying plaintiff's appeal, the Trustees explained:

> The [SSA] will review your continuing eligibility for
> payments at least once every 3 years, if your disability is
> not considered permanent.  The [SSA] deems your
> disability permanent if it sets review of your continuing
> eligibility for payments once every 5 to 7 years.  Their
> notice to you about the review of your case tells you when
> the review will be conducted.
> Your Social Security Disability Notice of Award dated
> March 26, 2007 provides . . . "Doctors and trained staff
> decided that you are disabled under our rules.  But, this
> decision must be reviewed at least once every 3 years."
> The Notice of Appeal establishes that you are disabled but
> your disability is not considered permanent.

(<u>Id.</u>)

Plaintiff argues that the two year period of time separating eligible

individuals from those who are ineligible is arbitrary and capricious; she also

suggests that defendants' denial of benefits is arbitrary and capricious because the

only medical evidence in the record is the opinion of plaintiff's treating physician,

Dr. Efiamou, that plaintiff's disability is permanent.  (Pl.'s Mem. at 5.)[5]  In

response, defendants argue, <u>inter alia</u>, that plaintiff has failed to provide evidence

sufficient to overcome the SSA's determination of non-permanence.  (Defs.' Mem. at

7.)

---

[5] As an additional point, plaintiff states that at the time the Pension Fund denied
plaintiff's claim, she had already been disabled since March 22, 2005 (which at that
point was seven years), yet because the SSA was unsure as to the permanence of
the disability in 2007 when it issued its determination, the Pension Fund deemed
the disability not permanent years later.  (Pl.'s Mem. at 5.)

There is no question that the Plan clearly articulates a set of rules for determining eligibility for a Disability Pension: under Section 4.10(b)(i), a participant must submit a "certification of _permanent_ disability" in order to be eligible for a Disability Pension (Ex. F at 11 (emphasis added)); pursuant to the applicable regulation, a permanent disability is one that is reviewed every five to seven years (not every three years). 20 C.F.R. § 404.1590(d). Thus, since plaintiff's Notice of Award states that she is disabled and that the SSA would review this determination every three years, the Plan dictates a clear outcome – plaintiff is ineligible for a Disability Pension under the terms of the Plan. (Napier Aff., Ex. I at 35.)

While the Plan admittedly requires plaintiff to weave her way through a number of fairly complicated documents, and although the outcome is admittedly regrettable in this case, the Plan at issue has a clear set of rules that provide predictability. The Plan's reliance on the SSA, and its policies and procedures, is sound.[6] See also Donovan v. Cunningham, 716 F.2d 1455, 1465 (5th Cir. 1983) ("In the complex setting of employee benefit plans, brightline rules are advantageous to

---

[6] The December 7, 2006 letter received by plaintiff may give the impression that plaintiff has a permanent disability insofar as it characterizes the decision as "fully favorable." (See Napier Aff., Ex. I at 28.) While the time to appeal the SSA's initial decision ran prior to plaintiff's receipt of the March 26, 2007, plaintiff had an additional 60 days to appeal the Notice of Award. (See id. at 34.) Had she done so, perhaps she could have achieved a finding of permanent disability and triggered coverage under the Plan.

beneficiaries and fiduciaries alike, providing assured protection to the former and clear notice of responsibility to the latter.").[7]

III.   CONCLUSION

Accordingly, defendants' motion for summary judgment is GRANTED.  The Clerk of Court is hereby directed to terminate the motions located at 7 and 11 and to terminate this action.


SO ORDERED.

Dated: New York, New York
       February 14, 2014

KATHERINE B. FORREST
United States District Judge

---

[7] The Court also notes that plaintiff received a full and fair review in compliance with 29 U.S.C. § 1133(2), which at the very least requires "that the fiduciary inform the participant or beneficiary of the evidence that the fiduciary relied upon and provide 'an opportunity to examine that evidence and to submit written comments or rebuttal' documents." Lidoshore v. Health Fund 917, 994 F. Supp. 229, 237 (S.D.N.Y. 1998) (quoting Grossmuller v. International Union, 715 F.2d 853, 858 (3d Cir. 1983)).